The STATE of Ohio, Appellee,

v.

CANTIN, Appellant.

[Cite as *State v. Cantin* (1999), 132 Ohio App.3d 808.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73513.

Decided March 29, 1999.

*William D. Mason*, Cuyahoga County Prosecuting Attorney, and *Linda R. Travis*, Assistant Prosecuting Attorney, for appellee.

*Weldon, Huston & Keyser* and *Robert R. Clarico*, for appellant.

---

DYKE, Judge.

Defendant Charles Cantin appeals from his conviction for burglary in violation of R.C. 2911.12(A)(2). For the reasons set forth below, we reverse the judgment of the trial court and vacate defendant's conviction.

On June 2, 1997, defendant was indicted for one count of burglary in violation of R.C. 2911.12(A)(2), which contains as an element of the offense that the trespass occurred while a person was present or likely to be present. Defendant pleaded not guilty and the matter proceeded to a jury trial on August 27, 1997.

The state's evidence established that at approximately 6:45 p.m., on March 27, 1997, Cleveland Police Officer David Kornatowski and his partner responded to a complaint of males breaking into a house on Bridge Avenue. A neighbor directed Kornatowski to the back of the house and he observed defendant exiting a window with a lock in his hand. Officer Kornatowski also observed that a board that had been placed over the window was broken and that there was broken glass inside the house.

According to Officer Kornatowski, defendant stated that he did remodeling work and that the homeowner had given him a key and permission to enter. Defendant could not correctly name the homeowner, however. Defendant also stated that neighbors two doors away could verify that he did remodeling work at the house every evening. These neighbors did not speak English and no verification was provided.

Lance Kuhnapfel testified that he purchased the home in 1989 and lived there. Over the past several years, Kuhnapfel had been renovating the downstairs. Kuhnapfel generally performed this work in the evening and on weekends. Kuhnapfel denied that defendant was involved in the renovation process and denied giving defendant permission to enter his home. Finally, Kuhnapfel stated that he was in Washington, D.C., at the time of the burglary. He explained that the trip was not planned in advance, but rather was scheduled suddenly for recuperation after surgery. Kuhnapfel left town on March 23, 1997, or approximately four days before the burglary. There was no evidence that Kuhnapfel asked anyone to look after the premises while he was away, that anyone else had a key to the premises, or that anyone was likely to be present.

Defendant testified on his own behalf and stated that he has had problems with drugs and alcohol and attends various sobriety programs. He works at the Veteran's Administration Hospital and also performs odd jobs in Ohio City. Defendant admitted that he has an extensive record but testified that he has been drug-free for five months.

On the day of the burglary, defendant unloaded trucks at the West Side Market, helped clean after sales were complete, then cleaned gutters for someone. Later, he got something to eat and met his friend Mike. Defendant had a change of clothing at this time.

Mike wanted to go to a house on Bridge Avenue to check on some doors. Mike indicated that the owner was out of town and that a neighbor had a key. Defendant waited for Mike for a while then walked toward the house with a change of clothing. Defendant left the clothing at the front door, went to the back, knocked on the door, and yelled for his friend.

According to defendant, it looked as though the house was being refurbished. The back door was "almost demolished" and there were no curtains. It appeared empty inside except for a bicycle. Defendant knocked on the neighbor's door, still trying to find Mike, but there was no answer. He heard Mike call to him and observed that Mike had pulled a board away from the window and was in the house. Defendant shouted at Mike for breaking in. Moments later he heard a police walkie-talkie and observed police officers. Mike fled inside the house. Defendant was apprehended and the arresting officer asked defendant about a nearby object. To comply with the officer's request, defendant handed him a lock that was on the window sill. Defendant did not see Mike again and does not know his last name.

For rebuttal, the state presented evidence that defendant did not leave clothing at the front door of the Kuhnapfel residence.

Defendant was subsequently convicted of burglary in violation of R.C. 2911.12(A)(2). The trial court sentenced defendant to seven years' incarceration. Defendant now appeals and assigns a single error for our review.

Defendant's assignment of error states:

■ "Mr. Cantin's due process rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution were violated and he was improperly denied a Crim.R. 29 acquittal when his conviction for burglary (R.C. 2911.12[A][2]) was not supported by sufficient evidence."

Within this assignment of error, defendant complains that he was erroneously convicted of R.C. 2911.12(A)(2) because there was no evidence that any person other than an accomplice of the offender was present or likely to be present in the house owned by Kuhnapfel.

The standard to be employed by a trial court in deciding a Crim.R. 29 motion is set out in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus:

"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

With regard to the substantive aspects of defendant's contentions, we note that "burglary" is defined in R.C. 2911.12 as follows:

"(A) No person, by force, stealth, or deception, shall do any of the following:

"(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;

"(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with the purpose to commit in the habitation any criminal offense;

"(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with the purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense;

" * * *

"(C) Whoever violates this section is guilty of burglary. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree."

An "occupied structure" is in turn defined in R.C. 2909.01(C) as "any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

"(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

"(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

"(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

"(4) At the time, any person is present or likely to be present in it."

In determining whether premises are an "occupied structure" pursuant to R.C. 2909.01, the court in *State v. Green* (1984), 18 Ohio App.3d 69, 72, 18 OBR 234, 236–237, 480 N.E.2d 1128, 1132, stated:

"Thus, a structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but, which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure 'maintained' as a dwelling within the meaning of division (A). In this context, then, division (A) includes a dwelling whose usual occupant is absent on prolonged vacation, a dwelling whose usual occupant is receiving long-term care in a nursing home, a summer cottage, or a residential rental unit which is temporarily vacant. In all these examples, even though the dwelling is not being presently occupied as a place of habitation, that situation is temporary, and persons are likely to be present from time to time to look after the property—to help 'maintain' its character as a dwelling."

With regard to whether a person other than an accomplice of the offender is "likely to be present" in the structure, we note that the fact that a residential dwelling has been burglarized does not lead to the presumption that someone was present or likely to be present in the structure. *State v. Fowler* (1983), 4 Ohio St.3d 16, 17, 4 OBR 14, 14–15, 445 N.E.2d 1119, 1119–1120. It must be demonstrated that another was present or likely to be present.

In *State v. Benner* (1988), 40 Ohio St.3d 301, 313, 533 N.E.2d 701, 714, the Supreme Court equated the term "likely" with the term "probable" and stated:

"According to the Oxford English Dictionary, 'probable' means '[h]aving an appearance of truth; that may in view of present evidence be reasonably expected to happen, or to prove true; likely.' VIII Oxford English Dictionary (1933) 1401, definition 3. 'Likely' is defined as follows: 'Having an appearance of truth or fact; that looks as if it would * * * prove to be what is alleged or suggested; probable.' VI Oxford English Dictionary (1933) 288, definition 2.

"According to Black's Law Dictionary, 'likelihood' means '[p]robability' and 'imports something less than reasonably certain.' Black's Law Dictionary (5 Ed.1979) 834, citing *Clark v. Welch* (C.A.1, 1944), 140 F.2d 271, 273. 'Likely' means '[p]robable' or '[i]n all probability.' *Id.*, citing *Horning v. Gerlach* (1934), 139 Cal.App. 470, 34 P.2d 504, 505. See, also, Webster's Third New International Dictionary (1971) 1310 and 1806."

■ As the court explained in *State v. Green, supra,* a person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present.

In *State v. Green, supra,* the owner of a single-family house had moved to another residence but returned to the subject premises on a daily basis to clean and make repairs. The defendant knew that the owner had moved out and made entry into the house after looking in and seeing that it was dark inside. The court affirmed defendant's conviction for burglary and determined that the expectation that a person could be present was warranted under the circumstances.

■ Other courts considering the issue of whether the expectation that a person could be present was warranted under the circumstances have considered this issue with reference to the resident's "usual schedule" or intentions. See *State v. Bateman* (June 26, 1997), Franklin App. No. 96APA09–1159, unreported, 1997 WL 360848. This court has also considered the issue from the standpoint of the resident's schedule or intentions, and stated: "As is often the case, a resident can return and surprise an unwary criminal who may have earlier thoroughly investigated the occupancy of the house." *State v. Brisbin* (Feb. 16, 1989), Cuyahoga App. No. 54921, unreported, 1989 WL 12918. Thus, where the burglary occurs during the regular work hours of the homeowner and there is no evidence that the homeowner was in and out or that he or she was likely to return at varying times, there is no evidence that a person is likely to be present at the time of the burglary. *State v. Lockhart* (1996), 115 Ohio App.3d 370, 373–374, 685 N.E.2d 564, 566–567.

Moreover, courts have focused upon the usual schedule and intention of the resident in instances where the burglary occurred while the resident was on vacation and have looked to circumstances demonstrating whether it was likely

that the resident could abruptly return or whether another person could have been present. See *State v. Stevens* (Mar. 22, 1994), Muskingum App. No. CA–93–30, unreported, 1994 WL 171808 (where family went camping overnight ten miles away in December and they had on other occasions cut trip short due to inclement weather conditions, they were "likely to be present" for purposes of applying burglary statute); *State v. Weber* (Dec. 23, 1997), Franklin App. No. 97APA03–322, unreported, 1997 WL 798299 (person could have been present where homeowner had gone to Florida for the winter, his children had permission to enter, and neighbor watched the property and turned on the porch light when the homeowner was out of town); *State v. Cochran* (Jan. 30, 1986), Cuyahoga App. No. 50057, unreported, 1986 WL 1302 (where the occupants were away on vacation but gave a neighbor a key and permission to enter daily to check on the house, a person is "present or likely to be present"); *State v. Robinson* (Oct. 24, 1985), Cuyahoga App. Nos. 49501, 49518, 49577, unreported, 1985 WL 8499 (there was a likelihood of someone being present where homeowner was on vacation but had given keys to a neighbor to check the house); *State v. Williams* (Mar. 4, 1981), Hamilton App. No. C–800141, unreported, 1981 WL 9663 (there was a likelihood that someone could be present where residents were away on vacation but neighbors had been given keys and would enter the house periodically to check on its condition); but, see, *State v. Beasley* (Aug. 12, 1982), Ross App. No. 893, unreported, 1982 WL 3500 (where occupying family is on vacation and a relative is given a key and permission to enter but fails to do so, court determined that no one was likely to be present at the time of trespass).

Applying the foregoing, we conclude from the evidence presented in this matter that reasonable minds could only conclude that the circumstances do not justify a logical expectation that a person was likely to be present at the Bridge Avenue home at the time of the trespass. Examining the question with reference to the usual schedule and intentions of the homeowner, Kuhnapfel had not been present in the home for four days before the burglary. There was no evidence to indicate that he could have returned at the time of the trespass and there was no evidence that he instructed anyone to check on the premises while he was away or that anyone else had a key.

The assignment of error is well taken. Because the defendant was entitled to a judgment of acquittal on the offense charged in the indictment pursuant to Crim.R. 29(A) based on the insufficiency of the evidence, we reverse defendant's conviction and enter the judgment that the trial court should have entered.

*Judgment reversed.*

Porter, A.J., and Rocco, J., concur.