OPINION
Steven Rodgers appeals from his conviction in the Clark County Common Pleas Court of abduction and burglary after a jury trial.
The primary witness for the State in this prosecution was Ms. Regina Priddy. She testified at trial that she began a romantic relationship with Rodgers in October 1999 and Rodgers lived with her and her two children until February 2000. During the next few months Rodgers occasionally spent the night at Ms. Priddy's house. Finally in June 2000, Priddy stopped her relationship with Rodgers because of his explosive temper and violent behavior.
Ms. Priddy testified that on July 28, 2000, at about 11:30 p.m., Rodgers forced his way into her apartment. Priddy testified that Rodgers threatened her and her children so she did not leave the apartment to summon police. (Tr. 51, 52). She also said she didn't call the police because the defendant wouldn't let her get near the phone. Ms. Priddy said she went to work the next day but stayed in a motel the next night because she was afraid of Rodgers. Later Priddy reported the July 28th incident to police and a warrant was issued for Rodgers' arrest on the charge of abduction and domestic violence.
In the early morning hours of August 5, 2000, Rodgers began calling Priddy incessantly asking to come over to her house and also asking Priddy for food and lodging. When Priddy refused, Rodgers threatened that he would have some people "shoot up" her house. At 3:00 a.m. Priddy finally left her home and went to a store to cash a check to give money to Rodgers. Her daughter Ashley left the home to stay with her father because of Rodgers' threats.
Finally at 7:00 a.m. Priddy said Rodgers called her and asked if he could come over and do his laundry but again Priddy refused Rodgers' request. When Rodgers insisted he was coming anyway, Priddy testified she fled to her neighbor's house.
From that location her neighbor Brian Green and Priddy observed Rodgers enter Priddy's apartment by use of a key Priddy said Rodgers must have stolen from her or her daughter. (Tr. 68, 69). Priddy then called the police who came to Priddy's apartment and attempted to get Rodgers to answer the door. When Rodgers refused to respond to the police, the police forcibly entered Priddy's apartment and arrested him. On cross-examination Priddy admitted she usually works at the Save-A-Lot grocery store between 7:00 a.m. and 2:00 p.m.
Rodgers testified in his own defense and denied that he abducted Ms. Priddy on July 28, 2000. In fact, Rodgers testified he had consensual sex with Priddy that evening at her home. (Tr. 146). He also denied that he broke into Priddy's house on August 5, 2000. He testified he didn't answer the door when the police arrived because "she's done set me up by telling me I could stay." (Tr. 150).
On cross-examination, Rodgers admitted to an extensive criminal record. He admitted that he had been unemployed for a substantial period of time and that Ms. Priddy often gave him money.
Priddy's seventeen year old daughter, Ashley, testified in rebuttal over the objection of the defendant. She testified that early on the Saturday morning of August 5, 2000 she overheard a phone conversation of her mother with Rodgers in which Rodgers told her mother she had fifteen minutes to get him fifteen dollars. Ashley said she called the police and gave them the location of Rodgers. Ashley said Rodgers showed up at their apartment but she wouldn't let him in. She said Rodgers left and then called the apartment on the phone and threatened her. She said she then called her father to pick her up because she was frightened of Rodgers.
In his first assignment of error, Rodgers contends his convictions are against the manifest weight of the evidence. R.C. 2905.02(A)(2) provides that no person, without privilege to do so, shall knowingly by force or threat, restrain the liberty of another person under circumstances which create a risk of physical harm to the victim, or place the other person in fear. Ms. Priddy's testimony, if believed by the jury, was sufficient to support Rodgers' conviction on that offense. It was also not against the manifest weight of the evidence.
R.C. 2911.12(A)(3) provides that no person by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person is present or likely to be present. R.C. 2911.21(A) provides that criminal trespass is committed when a person without privilege knowingly enters or remains on the land or premises of another.
Ms. Priddy's testimony would also support Rodgers' conviction on the burglary charge. There was evidence presented by Ms. Priddy that she spoke to Rodgers at 7:00 a.m. on the morning of the burglary. She said Rodgers entered her home shortly thereafter without her permission. Rodgers argues that the burglary conviction cannot stand because Priddy told him she was going to work that morning and therefore she was "not likely to be present" as required by the burglary statute. It is not the knowledge of the defendant concerning the habitation which is significant, however, but rather the probability or improbability of actual occupancy which in fact exists at the time of the offense, determined by all the facts surrounding that occupancy. State v. Durham
(1976), 49 Ohio App.2d 231.
Where the state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the state has presented sufficient evidence to support a charge of aggravated burglary under R.C. 2911.11. State v. Kilroy (1977), 50 Ohio St.2d 21. Justice Paul Brown wrote on behalf of an unanimous court:
 "In the case at bar, we hold that a jury could not reasonably find that no person was present or likely to be present at the time of the burglary. Appellee burglarized a home, a permanent residence that was regularly inhabited. The family was in and out of the home on the day in question. It was clearly fortuitous that one or the other of the residents did not return during the course of the crime, thus confronting the danger that the statute is designed to minimize. The mere fact that appellee saw one resident inside a neighbor's house certainly did not make it unlikely that the other resident would return shortly. To the contrary, a resident's proximity to his house increases the probability that he may return. Nor does this factual situation exclude the likelihood of the presence of legitimate guests or visitors in the residence. A defendant may not rely on fortunate hindsight to reduce the gravity of his crime.
 "Further, in determining the reasonableness of the existence of an aggravating circumstance, we must consider the overall rationale of the statute. The intent of the General Assembly in enacting R.C. 2911.11
was to elevate the degree of burglary in those instances in which the victim was exposed to a greater risk of harm. It is apparent that the General Assembly concluded that a burglary of a home posed a greater threat of danger to the victim than, for example, a burglary of a commercial establishment.
 "It is clear that the difference between aggravated burglary, as defined in R.C. 2911.11(A)(3), and burglary, as defined in R.C. 2911.12, is in the type and use of the occupied structure and not literally whether individuals will be home from work or play at a particular time. If the latter is accepted, there could be no aggravated burglary, for example, if members of a family happened to be at a neighbor's house, social event, church service or whatever because, in fact, they would not be "present or likely to be present." Such interpretation would not only defeat the intent of the General Assembly to protect families from burglaries and the resulting potential harm by attempting to deter the criminal but would also needless hamper future trials with factual issues relevant to the question of guilt."
In State v. Fowler (1983), 4 Ohio St.3d 16, the defendant was charged with burglarizing a home while the victims were away from their home at work. Evidence was presented that the Lanier family was home on the day of the crime, that the Laniers worked at different locations, and they were not always home at the same time. From these facts, the court held that a permissive inference could have been drawn by the jury that the Laniers were likely to be present in the residence at the time of the burglary.
In State v. Cantin (1999), 132 Ohio App.3d 808, the Cuyahoga County Court of Appeals held that was insufficient evidence to support a burglary conviction where the victim had not been home for four days prior to the burglary and there was no evidence that he instructed anyone to check on the premises while he was away.
In this matter Priddy's apartment was a place of permanent habitation which was regularly inhabited by Priddy and her daughter, Ashley. There was also evidence that Priddy and her daughter were in and out of their residence on the day of the burglary and their residence was burglarized while they were temporarily absent. While Ms. Priddy would normally be at work during the time Rodgers burglarized her house, there was sufficient evidence presented from which the jury could infer that her seventeen year old daughter was likely to be present in the residence. Accordingly the State presented sufficient evidence to support the charge of burglary. The first assignment of error is overruled.
In his second assignment Rodgers contends the trial court committed prejudicial error in permitting the State to present the testimony of Ashley Priddy in rebuttal when she was not listed as a prosecution witness as required by Crim.R. 16(B).
In State v. Howard (1978), 56 Ohio St.2d 328, the Ohio Supreme Court stated in dicta that the state should furnish upon a proper demand the names of all witnesses it reasonably anticipates it is likely to call, whether in its case-in-chief or in rebuttal. In State v. Parsons
(1983), 6 Ohio St.3d 442, the court adopted the Howard dicta but found that admission of the rebuttal witness' testimony was not grounds for reversal.The State does not dispute that Ashley Priddy was not disclosed as a prosecution rebuttal witness. Civ.R. 16(E)(3) sets forth several sanctions when a party fails to comply with a discovery request. The court may grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or make such other order as it deems just under the circumstances. It is within the trial court's discretion to decide what sanction to impose. State v. Parsons, supra, at 445.
In Howard, the Court held that because no request for a continuance was made by the defendant and because the trial court explicitly instructed the jurors to limit the rebuttal witness' testimony to the issue of the defendant's credibility the trial court had not committed prejudicial error. In this case, Rodgers did not request a continuance when the State called Ashley to the stand in rebuttal. Rodgers sought to preclude her testimony. Ashley's testimony was marginally relevant and only corroborated her mother's testimony concerning the defendant's phone calls on the morning of August 5th. She was not present when the alleged burglary occurred and she offered no testimony concerning the abduction charge. Any error in the admission of her testimony was clearly harmless. The second assignment of error is likewise overruled.
The judgment of the trial court is Affirmed.
WOLFF, P.J., and GRADY, J. concur.