[Cite as *In re State v. K.L.P.W.*, 2017-Ohio-5671.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| IN THE MATTER OF: STATE OF OHIO, | : | |
| Plaintiff-Appellee Cross-Appellant, | : | CASE NOS. CA2016-06-047 CA2016-06-053 |
| | : | O P I N I O N 7/3/2017 |
| - vs - | : | |
| | : | |
| K.L.P.W., | : | |
| Defendant-Appellant/ Cross-Appellee. | : | |


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 15-N000959


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee/cross-appellant

The Law Office of Joshua G. Burns, LLC, Joshua G. Burns, 423 Reading Road, Mason 45040, for appellant/cross-appellee


**S. POWELL, P.J.**

{¶ 1} Appellant, K.L.P.W., appeals from the decision of the Warren County Court of Common Pleas, Juvenile Division, adjudicating her a delinquent child. The state has also filed a cross-appeal alleging the trial court erred by excluding certain testimony from its consideration. For the reasons outlined below, we affirm the juvenile court's decision

adjudicating K.L.P.W. a delinquent child, thus rendering the issues raised in the state's cross-appeal moot.

{¶ 2} On Tuesday, October 6, 2015, Officer Darcy Workman with the Hamilton Township Police Department filed a complaint alleging K.L.P.W. was a delinquent child for having committed an act that if charged as an adult would constitute burglary in violation of R.C. 2911.12(B), a fourth-degree felony. According to the complaint, the charge stemmed from K.L.P.W.'s actions on Monday, October 5, 2015, when she is alleged to have burglarized a Warren County home then owned by Scott and Marybeth Gray (hereinafter, collectively "the Grays"). At the time of the offense, K.L.P.W. was 12 years old.

{¶ 3} On January 11, 2016, the juvenile court held an adjudication hearing before a juvenile court magistrate. During this hearing, the state presented testimony from the Grays, the Grays' neighbor, Beverly Luncan, and Officer Workman. The testimony revealed that K.L.P.W., along with two other 12-year-old girls, were seen by Luncan forcing their way into the Grays' garage. Luncan then called the police. Approximately five minutes later, Officer Workman arrived at the scene and discovered the three girls on the Grays' property. Luncan identified the three girls as the same girls she had seen forcing their way into the Grays' garage. The three girls were subsequently arrested.

{¶ 4} On January 22, 2016, the magistrate issued a decision adjudicating K.L.P.W. a delinquent child. K.L.P.W. then filed objections to the magistrate's decision, which, for purposes of this appeal, the juvenile court denied on March 29, 2016.

{¶ 5} On June 3, 2016, the magistrate held a disposition hearing and issued a dispositional decision committing K.L.P.W. to the Warren County Juvenile Detention Center for a period of five days, all of which was suspended. The magistrate also ordered K.L.P.W. to complete 20 hours of community service. The juvenile court later adopted the magistrate's

decision in an entry issued on June 5, 2016. K.L.P.W. now appeals from the juvenile court's decision, raising the following single assignment of error for review.

{¶ 6} THE TRIAL COURT ERRED IN FINDING APPELLANT COMMITTED BURGLARY AND IN ADJUDICATING APPELLANT A DELINQUENT CHILD.

{¶ 7} In her single assignment of error, K.L.P.W. argues her adjudication as a delinquent child for having committed an act that if charged as an adult would constitute burglary in violation of R.C. 2911.12(B) was not supported by sufficient evidence. We disagree.

{¶ 8} In reviewing whether a juvenile's delinquency adjudication is supported by sufficient evidence, the standard of review is the same as the standard used in adult criminal cases. *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 16. In those cases, when reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

**{¶ 9}** As noted above, K.L.P.W. was adjudicated a delinquent child for committing an act that if charged as an adult would constitute burglary in violation of R.C. 2911.12(B). Pursuant to that statute, no person, by force, stealth, or deception, "shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." As such, the state was required to prove beyond a reasonable doubt that K.L.P.W. used force, stealth, or deception to trespass into the Grays' Warren County residence at a time when another person, other than either of her two accomplices, was present or likely to be present. *In re A.C.D.*, 12th Dist. Warren No. CA2014-06-085, 2015-Ohio-232, ¶ 11.

**{¶ 10}** Initially, K.L.P.W. argues her adjudication should be reversed because the juvenile court applied the incorrect standard by finding she trespassed into an "occupied structure" as opposed to a "permanent or temporary habitation." However, as defined by R.C. 2909.01(C)(2), the term "occupied structure" includes the phrase "permanent or temporary habitation." Specifically, that section states that an "occupied structure" means any house that "[a]t the time, it is occupied as the *permanent or temporary habitation* of any person, whether or not any person is actually present." (Emphasis added.) Therefore, just as noted by the state, the phrase "permanent or temporary habitation" is a subset of the more generalized term "occupied structure" as defined by R.C. 2909.01(C)(2). K.L.P.W.'s first argument is therefore without merit.

**{¶ 11}** Next, K.L.P.W. argues her adjudication must be reversed because the Grays' Warren County residence was not a "permanent or temporary habitation." The term "habitation" is not further defined by the Ohio Revised Code. Nevertheless, "[i]f a term is not defined in the Revised Code, then the common, everyday meaning of the term governs." *State v. Martin*, 12th Dist. Butler No. CA2015-05-085, 2016-Ohio-453, ¶ 11, citing *State v.*

*White*, 29 Ohio St.3d 39, 40 (1987). According to Black's Law Dictionary, a "habitation" is defined as "[a] dwelling place; a domicile."

{¶ 12} According to K.L.P.W., the Grays' Warren County residence cannot be considered a "habitation" because it was not a "domicile of anyone" since the Grays forwarded their mail to a different address, spent a "vast majority" of their time elsewhere, and "intended on moving their remaining property" from the home. K.L.P.W. also notes that the Grays' neighbor, Beverly Luncan, described the property as "abandoned" when talking with Officer Workman. K.L.P.W.'s assertions, however, ignore the extensive testimony from the Grays themselves that indicate they still lived at their Warren County residence and, although they had considered moving since the property was in foreclosure, had no explicit intention of leaving at that time, thus rendering the Warren County residence their domicile.

{¶ 13} For instance, while acknowledging the property was in foreclosure, Scott testified he and Marybeth had lived at the Warren County residence as their primary home for the past 13 years. Scott also testified that although he and Marybeth spent significant time away from the Warren County residence to take care of his ailing grandmother, Scott would nevertheless go to the home "typically in the evening or on the weekend but my wife would go over during the day sometimes." According to Scott, this occurred on average at least three times a week, but that he would also "go over there on a spurt, and, spend several days just kind of as needed." This included several instances where Scott testified he and Marybeth spent the night at the Warren County residence.

{¶ 14} Scott further testified he and Marybeth kept their clothes and other belongings at the Warren County residence, which was still furnished, and that Scott paid his cousin to maintain and mow the yard. There was also testimony that Scott's sister had a key to the property. Confirming Scott's testimony, Marybeth testified she also stopped by the Warren

County residence a "couple times a week," as well as sometime during every weekend. The record further indicates the Grays had last been to the property a mere two days earlier, on Saturday, October 3, 2015, and that they were "kind of on the fence of whether we were gonna stay there or whether we were gonna move[.]" As Marybeth testified, she could have stopped at the Warren County residence on any given day and at any given time.

{¶ 15} "Domicile" has traditionally been defined as a "'residence in fact, combined with the intention of making the place of residence one's home for an indefinite period.'" *State v. Myers*, 193 Ohio App.3d 632, 2011-Ohio-2470, ¶ 4 (12th Dist.), quoting *City of Cleveland v. Surella*, 61 Ohio App.3d 302, 305 (8th Dist.1989). In other words, as defined by Black's Law Dictionary, a domicile "requires bodily presence plus an intention to make the place one's home." After a thorough review of the record, although spending a significant amount of time elsewhere in order to take care of Scott's ailing grandmother, it is clear that the Grays' Warren County residence served as their dwelling place and domicile. Simply stated, the record is devoid of any evidence indicating the Grays had a specific intention to move from their Warren County residence, despite the fact that the property was in foreclosure. Again, as both Scott and Marybeth testified, they were unsure as to whether they would move from the Warren County residence, a home that they had lived in for the previous 13 years. Therefore, K.L.P.W.'s second argument is also without merit.

{¶ 16} Finally, K.L.P.W. argues her adjudication must be reversed because there was no evidence that any other person besides her two accomplices were present or likely to be present at the Grays' Warren County residence on the day in question. Although the term "likely" connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty. *State v. Pennington*, 12th Dist. Warren. No. CA2006-11-136, 2007-Ohio-6572, ¶ 29. A person is likely to be present when a

consideration of all the circumstances would seem to justify a logical expectation that a person could be present. *Id.*

{¶ 17} The fact that a permanent or temporary habitation has been burglarized does not give rise to the presumption that a person was present or likely to be present. *Pennington*, 2007-Ohio-6572 at ¶ 30; *State v. Fowler*, 4 Ohio St.3d 16, 18-19 (1983). Likewise, "[t]he fact that a dwelling is used as a residence is not, standing alone, sufficient to show that someone is 'likely to be present' at the time of a burglary." *State v. Jackson*, 188 Ohio App.3d 803, 2010-Ohio-1846, ¶ 9 (4th Dist.). The state must adduce specific evidence that people were present or likely to be present. *Pennington* at ¶ 28.

{¶ 18} The Ohio Supreme Court has held the "likely to be present" element is satisfied where the structure is a permanent dwelling house that is regularly inhabited, the occupants were in and out of the house on the day in question, and the occupants were temporarily absent when the burglary occurred. *State v. Kilby*, 50 Ohio St.2d 21, 23 (1977). On the other hand, courts, including this one, have found insufficient evidence that the occupants of a residence were likely to be present when they were absent for an extended period of time, such as a vacation, and no one else was regularly checking on the house. *See, e.g., State v. Hibbard,* 12th Dist. Butler Nos. CA2001-12-276 and CA2001-12-286, 2003-Ohio-707; *State v. Cantin*, 132 Ohio App.3d 808 (8th Dist.1999); and *State v. Brightman*, 2d Dist. Montgomery No. 20344, 2005-Ohio-3173.

{¶ 19} In this case, although unoccupied at the time K.L.P.W. and her two accomplices forced their way into the Grays' garage, the record clearly indicates that the Grays' Warren County residence constituted a permanent or temporary habitation where a person was likely to be present. Again, as noted above, Scott testified he and Marybeth had lived at the Warren County residence as their primary home for the past 13 years. Scott also

testified that during the time in question he would go to the Warren County residence "typically in the evening or on the weekend but my wife would go over during the day sometimes." According to Scott, this occurred on average at least three times a week, but that he would also "go over there on a spurt, and, spend several days just kind of as needed." This included several instances where Scott testified that he and Marybeth spent the night at the Warren County residence.

{¶ 20} Scott further testified that he and Marybeth kept their clothes and other belongings at the Warren County residence, which was furnished, and that Scott paid his cousin to maintain and mow the yard. There was also testimony that Scott's sister had a key to the property. This testimony was later confirmed by Marybeth, who testified that she also stopped by the Warren County residence a "couple times a week," as well sometime during every weekend. The record further indicates that the Grays had last been to the property a mere two days earlier, on Saturday, October 3, 2015, and that they were "kind of on the fence of whether we were gonna stay there or whether we were gonna move[.]" Therefore, because the Warren County residence was a permanent dwelling where another person, either one of the Grays or Scott's cousin or sister, was likely to be present, we find K.L.P.W.'s adjudication as a delinquent child was supported by sufficient evidence. Accordingly, K.L.P.W.'s final argument is likewise without merit and K.L.P.W.'s single assignment of error is overruled.

{¶ 21} The state has also filed a cross-appeal arguing the juvenile court erred by excluding certain evidence from trial for its consideration. In light of our decision above, we find the issues raised by the state's cross-appeal are now rendered moot. To hold otherwise would necessitate this court to issue "an opinion concerning a matter which is no longer in controversy due to the [juvenile court's] decision. We decline to issue such an advisory

opinion." *State v. Osborne*, 12th Dist. Butler No. CA86-03-039, 1987 Ohio App. LEXIS 9307, *4 (Oct. 26, 1987). In so holding, we note that while we believe a charge of burglary may have been overly harsh given the facts of this case, it is the state that decides what offense to charge, even if that charge is brought against a 12-year-old girl. Therefore, finding no error in the juvenile court's decision adjudicating K.L.P.W. a delinquent child, the juvenile court's decision is affirmed.

{¶ 22} Judgment affirmed.

RINGLAND, J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 23} The testimony the state relies upon to establish someone was likely to be present on the day the trespass occurred merely establishes the *possibility* that someone *might* have gone to the house on that day. There is no testimony to justify a logical expectation that on the day in question, anyone was anticipated to be at the house or planned on returning to the house that day.

{¶ 24} In my opinion, the fact that a person "sometimes" goes to the house at whim, is nothing more than a *possibility*. Precedent repetitively demonstrates that the likelihood of someone being present must be specific to when the trespass occurred. The testimony of someone going to the house on weekends or in the evenings is of no relevance because this trespass occurred neither on the weekend nor in the evening. The suggestion that someone might have gone there that day is like the suggestion we rejected in *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633. Such testimony has no probative value that someone was likely to be present when the three girls knocked twice, received no response,

then entered the garage attached to the house which was in the process of foreclosure.

{¶ 25} If people were "in and out on the day in question," that would be a different matter. *State v. Fowler*, 4 Ohio St.3d 16, 19 (1983). Here, however, the testimony does not suggest that the house was "regularly inhabited" nor that anyone *regularly* visited the house on Mondays when this event occurred. Nor was there any testimony that someone regularly visited the house during the afternoons. There was no testimony that work schedules or other routines made it likely or expected that someone would be in the residence, or going to the residence, when the trespass occurred. *See State v. Jackson*, 188 Ohio App.3d 803, 2010-Ohio-1846 (4th Dist.).

{¶ 26} A neighbor considered the house to be "abandoned" and gave no testimony of persons being at the house in an ongoing or routine way, let alone in the afternoon when this trespass occurred. Despite family members sometimes going to the residence on sporadic, unestablished days at undetermined times, there was simply no testimony to demonstrate that the circumstances "justify a logical expectation" that a person was likely to be present when the three girls went inside. *Petit*, 2017-Ohio-633.

{¶ 27} Like *Petit*, "the state presented no evidence that the victim would have returned home while the burglary was taking place." *Id.* at ¶ 25. In *Petit,* we reversed due to the evidence being insufficient that someone was likely to be home even though the state's position was that the victim "could have decided to go home * * * and was intending to go home." *Id.* We also specified in *Petit*, "the state *must* adduce *specific evidence* that the occupant was present or likely to be present" and the state failed to prove the necessary element of "likely to be present" because of the lack of a "timeline."[1] *Id.* at ¶ 23 and ¶ 20.

---

1. Relative degrees of burglary are directly related to the potential risk of harm posed by the circumstances. *See State v. Marriott*, 189 Ohio App.3d 98, 2010-Ohio-3115 (2d Dist.). The entire record sub judice does not reveal *any* testimony of a realistic risk of harm other than the trespass itself.

(Emphasis added).

{¶ 28} While the evidence before us is certainly sufficient to support an adjudication of delinquency of a lesser offense, the evidence is insufficient to support an adjudication of delinquency by burglary because an element of that offense was not established.  Therefore, as to this aspect of the majority's opinion only, I would respectfully dissent and I would reverse as to the sufficiency of the evidence for which K.L.P.W. was adjudicated delinquent.