OPINION
{¶ 1} Appellant, Alan A. Wojtkiewicz, appeals from the November 23, 2005 judgment entry of the Portage County Municipal Court, Ravenna Division, finding appellant guilty and sentencing him.
 {¶ 2} On January 3, 2005, Amanda Doak ("the victim") filed a complaint in the Portage County Municipal Court, Ravenna Division, alleging that appellant committed an act of domestic violence against her, in violation of R.C. 2929.25(A), a misdemeanor of the first degree. The victim alleged in the complaint that on or about January 1, 2005, appellant grabbed her by the mouth and arm, causing visible injuries. Appellant entered a plea of not guilty to this charge at his initial appearance.
 {¶ 3} The trial court issued a temporary protection order to the victim on January 3, 2005, prohibiting appellant from having any contact with her.
 {¶ 4} A jury trial took place on July 5 and 6, 2005. The following disputed facts were revealed at trial. The victim testified first for appellee, the state of Ohio. She stated that appellant was her ex-boyfriend. They began living together in January 2001. She indicated that Dale Clark ("Clark"), appellant's friend, also lived with them at the time of the incident.
 {¶ 5} The victim recalled that she was at home with appellant and Clark on the morning of January 1, 2005, when she and appellant got into an argument. She said that appellant intentionally broke her watch that her parents had just given her for Christmas. She began to leave the room, when appellant grabbed her from behind, and shoved her outside. She testified that she fell onto the cement, hitting her hands and knees. Before she could get up, appellant picked her up by her right forearm, leaving a mark where he grabbed her. She then began to yell for help, and that is when appellant put his hand over her mouth and nose, making it difficult for her to breathe and causing her to struggle. He did this for approximately five minutes. She stated that he then grabbed her by the throat, pushed her up against the house, and slammed her head into the wall, all the while still covering her mouth with his other hand.
 {¶ 6} She indicated that she sustained injuries from this incident, including a cut on the inside of her lip, a lump on her head, bruises on her knees, and a swollen and bruised right forearm. She identified pictures of her injuries that were taken by her father and the police at the hospital, including pictures of her face and mouth, which she had dried blood smeared on her cheeks, lips, and chin; her arm, which had a red mark on it; her knees, which had bruises; and her back, which had scratches.
 {¶ 7} Patrolman Joseph Smolic of the Streetsboro Police Department testified next for appellee. He stated that he was on duty on July 1, 2005, when he responded to a call of assault. He testified that he saw that the victim's bottom lip was bloody and that her upper right forearm looked punctured and swollen. He took photographs of the injuries, which he identified in court.
 {¶ 8} At the close of appellee's case, appellant moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.
 {¶ 9} Clark testified first for appellant. He stated that he was in the basement on January 1, 2005, when he heard the victim screaming. He went outside and saw the victim swinging her arms at appellant, slapping him once or twice. He said that he saw appellant put his hand over the victim's mouth to get her to stop screaming. He indicated that when they went inside, the victim went into the bathroom. When she came out, he saw that her lip was bleeding, but that he had not noticed it before she went into the bathroom. She began yelling at appellant, and then she slapped him again in the face and left the house.
 {¶ 10} Appellant took the stand next. He recalled on January 1, 2005, he got angry with the victim. He stated that she is the one who threw the watch at him, but that he did not know if it broke. He remembered that he did not want to fight, so he began to walk outside, when she ran at him. As he walked through the door to go outside, she grabbed him, scratching him. He identified pictures of the back of his neck with scratches on it, taken by the police department. When they got outside, he said that she was screaming, crying, and "just swinging at me." He testified that she slapped him at least six times. He wrapped his arms around her to get her to stop and that is when he put his hand over her mouth because he did not want to disturb the neighbors over something "so stupid." He denied dragging her or pushing her up against the house. He also stated that he did not see any blood on her mouth after he removed his hand.
 {¶ 11} Appellant described on cross-examination, when asked if he knew why the victim's mouth was bleeding, that "[s]he was — as I had my hand over her mouth she was still trying to scream." When questioned if he had any other explanation for her injuries, he replied, that she "bit her lip." When further asked, "[w]ith a little help from you[,]" he responded "yes."
 {¶ 12} At the close of appellant's case, appellant's counsel renewed the Crim.R. 29 motion which was overruled by the trial court.
 {¶ 13} The jury returned a verdict of guilty on July 11, 2005. Pursuant to its November 23, 2005 judgment entry, the trial court sentenced appellant to one hundred-eighty days in jail, suspending one hundred-fifty days on the conditions that appellant complete an evaluation at the Kevin Coleman Center, have no contact with the victim, and be placed on probation for one year. The sentence was stayed pending appeal.
 {¶ 14} It is from the November 23, 2005 judgment that appellant appealed, raising the following assignments of error:
 {¶ 15} "[1.] The [t]rial [c]ourt erred to the prejudice of [appellant] by excluding evidence of alleged victim's mental state including writings of alleged victim, and evidence of alleged victim's psychiatric and psychological medication and treatment.
 {¶ 16} "[2.] The [t]rial [c]ourt erred to the prejudice of [appellant] by failing to include in [j]ury [i]nstructions the admonishment that if the [j]udge has in anyway appeared to favor one side the jury is to disregard this appearance and making reference to the inconsistencies demonstrated by the defense as `trivial matters.'
 {¶ 17} "[3.] The [t]rial [c]ourt erred to the prejudice of [appellant] by finding him guilty of [d]omestic [v]iolence against the [m]anifest [w]eight of the [e]vidence."
 {¶ 18} In his first assignment of error, appellant argues that the trial court erred when it granted appellee's motion in limine to exclude any evidence, including written communications, regarding the victim's psychiatric or psychological treatment, medication, or counseling. Specifically, appellant argues that he did not get to fully cross-examine the victim, which violated his Sixth Amendment right to confront a witness giving testimony against him.
 {¶ 19} At the outset, we note that appellant failed to properly preserve this issue for appeal. It is well-settled under Ohio law that the initial ruling of the trial court before granting a motion in limine is not a final appealable order because such order does not determine the ultimate admissibility of the evidence. State v. Armstrong, 11th Dist. Nos. 2001-T-0120 and 2002-T-0071, 2004-Ohio-5635, at ¶ 43. Thus, "at trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion inlimine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." State v. Grubb
(1986), 28 Ohio St.3d 199, paragraph two of the syllabus.
 {¶ 20} The Grubb court further noted that, "a motion inlimine, if granted, is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue. In virtually all circumstances finality does not attach when the motion is granted. Therefore, should circumstances subsequently develop at trial, the trial court is certainly at liberty `(* * *) to consider the admissibility of the disputed evidence in its actual context.' State v. White
(1982), 6 Ohio App.3d 1, at 4." Grubb at 201-202.
 {¶ 21} In the case sub judice, the trial court addressed pretrial matters, including appellee's motion in limine, in the judge's chambers before commencing the trial. In the motion, appellee moved to have testimony or evidence excluded pertaining to communications, written or oral, from the victim to appellant prior to January 1, 2005, as well as evidence regarding psychiatric or psychological medication or treatment.
 {¶ 22} The trial judge stated, "I am going to rule that * * * not come in, if it's anything that happened prior. * * * I am ruling now you can't do it. We'll have to see how the evidence develops. It may be that it may be proper in the circumstances. But just right now I will rule that stays out. * * * As I said, this is my initial ruling. Once we get into it, as the evidence develops, I may decide that that's within the context and it could come in. But right now I'm saying don't get into it. O.K." Appellant's counsel stated, "O.K. I just want to — just for the record, your Honor, I want to object to that for the record because I think that goes clearly to her state of mind when making these allegations." The trial judge replied, "[y]eah. I think you may be right, however, we'll cross that bridge when we come to it."
 {¶ 23} However, a review of the record reveals that appellant never raised the issue again at trial, nor did he attempt to proffer the evidence, or renew his objection in order to preserve the issue for appeal. Grubb, paragraph two of the syllabus;Armstrong, supra, at ¶ 43; State v. Totarella, 11th Dist. No. 2002-L-147, 2004-Ohio-1175, at ¶ 37; State v. Delarosa, 11th Dist. No. 2003-P-0129, 2005-Ohio-3399, at ¶ 62. Thus, the question of whether the lower court abused its discretion in excluding evidence regarding communications between the victim and appellant prior to the incident and the victim's mental health history is not properly before this court.
 {¶ 24} Although appellant does not raise it, under Crim.R. 52(B), we do have the power to recognize plain errors or defects involving substantial rights when they are not properly preserved for appeal. State v. Long (1978), 53 Ohio St.2d 91, 94; Statev. Campbell (1994), 69 Ohio St.3d 38, 41. However, the rule may be invoked only in rare cases. Long at 94-95; Campbell at 41. Plain error does not exist unless, but for the error, the outcome at trial would have been different. State v. Jenks (1991),61 Ohio St.3d 259, 282.
 {¶ 25} In the case sub judice, we simply cannot conclude that plain error exists. First, trial courts have wide latitude in admitting or excluding evidence. Long, supra, at 98. Thus, an appellate court's review of evidential matters is limited to determining whether the trial court abused its discretion. Id. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. State v.Finnerty (1989), 45 Ohio St.3d 104, 107.
 {¶ 26} Here, the trial court initially ruled that the evidence could not be introduced. However, the trial court stated on the record that it might allow the evidence to come in during the trial, depending upon how the case developed. Again, appellant did not attempt to introduce any evidence regarding an alleged communication between appellant and the victim, or any evidence regarding the victim's mental health history, during the trial. Further, appellant did not attempt to proffer this evidence. Thus, we cannot conclude that the trial court acted unreasonable, arbitrary, or unconscionable in making an initial
decision to exclude testimony or evidence regarding an alleged written communication that occurred prior to the date of the incident, or the victim's alleged mental health history. Grubb,
supra, at 203. As such, appellant's first assignment of error lacks merit.
 {¶ 27} In his second assignment of error, appellant argues that the trial judge erred to the prejudice of appellant by failing to include an instruction to the jury that if the judge had appeared to favor one side, then the jury should disregard this appearance. Specifically, appellant argues that in giving jury instructions, "[w]hile saying `trivial matters' the [c]ourt gestured to the list of inconsistencies in the complaining witness's testimony still written on the blackboard [which apparently appellant had used in his final arguments] in the courtroom." Appellant maintains that this gesture trivialized the highlighted inconsistencies in the victim's testimony in appellant's defense.
 {¶ 28} An appellate court will not reverse a conviction in a criminal case due to jury instructions unless it concludes that the jury instructions amounted to prejudicial error. State v.Dehass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus. Further, jury instructions must be viewed in the context of the entire charge rather than in isolation. State v. Price (1979),60 Ohio St.2d 136, paragraph four of the syllabus; State v.Dixon, 101 Ohio St.3d 328, 2004-Ohio-1585, at ¶ 41.
 {¶ 29} We note that the alleged gesture is not in the record on appeal. Appellant's counsel did not bring to the attention of the trial judge the fact that an alleged gesture may have inappropriately influenced the jury. Crim.R. 30(A) provides that, in order for a party to assign as error the giving of a jury instruction, the party must have specifically stated the grounds for objection at the time the objection was made. We further note that appellant's counsel did not request the judge to make a particular instruction to the jury to disregard any gesture allegedly made by him, or to disregard any favoritism he may have shown to either side.
 {¶ 30} In the case sub judice, after instructing the jury on the applicable law, the trial court stated the following pertinent comments to the jury:
 {¶ 31} "[k]eep in mind this trial today is about something that happened six months ago. And all of you, I'm sure, are aware of the fact that after the passage of time a person may forget certain — certain minor details. They may recall certain details inaccurately. And what you need to do is consider whether those inaccuracies or inconsistencies have anything to do with important facts or whether they have to do with trivial matters. And that is what you do with inconsistencies that you may have observed in the testimony of all the witnesses."
 {¶ 32} The record shows that after instructing the jury, the trial judge asked counsel to approach the bench. Outside of the hearing of the jury, the judge asked counsel if there was anything they wanted to add to the instructions. Both counsel replied "no." The judge then asked counsel if either of them objected to any part of the instructions. Counsel for appellant replied, "[t]he part of the inconsistencies, was that in your thing or was that your statement?" The judge responded, "[i]t was in what I normally read before the trial. You know, the very beginning before the evidence is presented. I did not bring that in with me. But that is what I read at that time." Counsel for appellant stated, "O.K. I just, for purposes of the record, I want to object to that portion. But just for the record."
 {¶ 33} Thus, a review of the record shows that appellant objected to "the part [about] the inconsistencies." We have reviewed the trial judge's instructions with respect to inconsistencies. We construe these comments to be cautionary instructions and conclude that the trial judge did not error when she gave them after instructing the jury on the elements of the offense.
 {¶ 34} In State v. Comen (1990), 50 Ohio St.3d 206, 209, the Supreme Court of Ohio stated:
 {¶ 35} "Crim.R. 30 provides in pertinent part:
 {¶ 36} "* * *
 {¶ 37} "(B) Cautionary Instructions. At the commencement andduring the course of the trial, the court may give the jurycautionary and other instructions of law relating to trialprocedure, credibility and weight of the evidence, and the dutyand function of the jury and may acquaint the jury generally withthe nature of the case. (Emphasis added.)
 {¶ 38} "* * *
 {¶ 39} "* * * Crim. R. 30(B) plays an important part in the trial process. Preliminary instructions prepare the jury for trial providing orientation so the jury is properly informed as to its duties and responsibilities. Cautionary instructions are often utilized in instructing the jury to consider only certain evidence for a specific purpose, or to inform the jury not to be influenced by extraneous matters.
 {¶ 40} "If the preliminary or cautionary instructions include matters of law vital to the right of a defendant, the trial court is not excused from including or repeating all such instructions after the arguments are completed. Repeating instructions means fully instructing the jury on the law applicable to the case and not providing them simply with a cursory reminder of what was earlier provided in either the preliminary or cautionary instructions. Regardless of the length of trial, the court cannot assume the jury recalls or remembers the prior instructions."
 {¶ 41} After reviewing the instructions in their entirety, we conclude that the trial judge properly instructed the jury on the essential elements of the charge. Further, the trial judge did not err when he gave his cautionary instructions after arguments were completed, rather than "[a]t the commencement and during the course of the trial[.]" Crim.R. 30(B). Accordingly, appellant's second assignment of error lacks merit.
 {¶ 42} Appellant does not provide any argument or authority for his third assignment of error as required by App.R. 16, and thus, we will not address it.
 {¶ 43} Accordingly, appellant's first, second, and third assignments of error lack merit. The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.
Rice, J., O'Toole, J., concur.