OPINION
{¶ 1} Jesse A. Cochran appeals the judgment of the Geauga County Court of Common Pleas, based on a jury verdict, finding him guilty on numerous counts related to his alleged participation in a theft ring, and sentencing him to an aggregate of eight years in prison. We affirm in part, and reverse in part.
 {¶ 2} March 23, 2005, an indictment in fifteen counts by the Geauga County Grand Jury was filed against Mr. Cochran: two counts of breaking and entry, fifth degree felonies in violation of R.C. 2911.13(A); five counts of burglary, second degree felonies in violation of R.C.2911.12(A)(2); one count of grand theft, a fourth degree felony in violation of R.C. 2913.02(A)(1); one count of grand theft of a motor vehicle, a fourth degree felony also in violation of R.C. 2913.02(A)(1); five counts of theft, fifth degree felonies in violation of R.C.2913.02(A)(1); and two counts of petty theft, a first degree misdemeanor in violation of R.C. 2913.02(A)(1). May 6, 2005, Mr. Cochran pled not guilty to each count.
 {¶ 3} The matter was scheduled for trial commencing September 27, 2005. That day, the trial court overruled Mr. Cochran's motion for a continuance, and granted, in part, his motion in limine regarding certain testimony. On the state's motion, the trial court dismissed the grand theft count.
 {¶ 4} September 29, 2005, the jury returned a verdict of guilty on each of the remaining fourteen counts. March 1, 2006, the trial court sentenced Mr. Cochran to an aggregate term of eight years imprisonment. March 29, 2006, Mr. Cochran timely noticed this appeal, making nine assignments of error:
 {¶ 5} "[1.] Defendant was denied due process of law and fair trial when the court permitted an investigating detective, Elizabeth Hurd testified [sic] concerning her investigation in Portage County.
 {¶ 6} "[2.] Defendant was denied due process of law and his right to present a defense when the court did not grant a continuance and totally excluded a newly discovered defense witness [.]
 {¶ 7} "[3.] Defendant was denied due process and a fair trial when the court allowed extensive evidence concerning other criminal acts and failed to proper [sic] limit that evidence in its jury instructions [.]
 {¶ 8} "[4.] Defendant was denied due process of law when the court did not fully inform the jury as to the definition of an occupied structure.
 {¶ 9} "[5.] Defendant was denied due process of law when the court gave confusing and incomplete instructions defining the offense of theft.
 {¶ 10} "[6.] Defendant was denied due process of law when the court did not instruct on the lesser offense of burglary under § 2911.12(A)(3) of the Ohio Revised Code [.]
 {¶ 11} "[7.] Defendant was denied due process of law when the court failed to instruct the jury that pleas of guilty by co-conspirators could not be considered as evidence of defendant's guilt.
 {¶ 12} "[8.] Defendant was denied due process of law when he was convicted of burglary, a second degree felony [.]
 {¶ 13} "[9.] Defendant was denied due process of law when he was sentenced to a maximum term of imprisonment based on a misapplication of the sentencing laws and facts found by the court."
 {¶ 14} Mr. Cochran's convictions spring from a theft ring he allegedly operated with Mr. Jack Laughery and Mr. Angelo Vecchio, each of whom testified for the state. The three friends would evidently drive around Geauga and Portage counties, looking for homes where the residents were out. They would then take valuables from the properties, which they would sell. At trial, Portage County detective Elizabeth Hurd and Geauga County detective Juanita Vetter testified regarding their investigations of the crimes; the balance of the homeowners whose premises were robbed testified, as did various purchasers of the stolen property.
 {¶ 15} By his first assignment of error, Mr. Cochran attacks the trial court's decision to let Detectives Hurd and Vetter testify regarding their conversations with Mr. Laughery, various of the robbery victims, and other witnesses during the course of their investigations. He further objects that the detectives were allowed to testify regarding exhibits and pictures of the alleged stolen items; and, that Detective Vetter testified regarding elements of the Portage County investigation. Mr. Cochran contends all of this testimony was inadmissible hearsay. The state replies that the detectives' testimony was not introduced to establish the truth of any matter, but, rather, to illustrate their investigations, and is admissible. State v. Thomas (1980),61 Ohio St.2d 223, 232. It further notes that most of the declarants whose statements were mentioned by the detectives testified at trial, giving Mr. Cochran's counsel the opportunity to cross-examine, thus curing any defect.[1] State v. Keenan (1998), 81 Ohio St.3d 133, 142. The state contends that any error in admitting the detectives' testimony was harmless.
 {¶ 16} We agree. Evidentiary rulings are within the sound discretion of the trial court: we may not disturb them absent a clear abuse of that discretion. State v. Bennett, 11th Dist. No. 2002-A-0020,2005-Ohio-1567, at ¶ 39. Abuse of discretion is not mere error of law or judgment. Rather, it connotes that the attitude of the trial court was unreasonable, arbitrary, or unconscionable. Id. at ¶ 40. The testimony of Detectives Hurd and Vetter is ripe with inadmissible hearsay, consisting, particularly, of the out-of-court statements of various witnesses. However, as these declarants testified as well, and were subjected to cross-examination, we cannot say the detectives' testimony involved the normal risks attendant on hearsay. Keenan at 142. Further, as the Ohio Supreme Court has noted, the admission of improper evidence is harmless if the remaining evidence provides overwhelming proof of the defendant's guilt. State v. Sage (1987), 31 Ohio St.3d 173, 181. In this case, the testimony of the alleged accomplices, the various homeowners, and the purchasers of the stolen property is sufficient to "overwhelm" any error in admitting the detectives' testimony.
 {¶ 17} The first assignment of error lacks merit.
 {¶ 18} By his second assignment of error, Mr. Cochran alleges the trial court improperly denied his motion for a continuance, first made the day trial commenced, and renewed the second day of trial. Mr. Cochran desired the continuance in order to obtain the testimony of his mother, Alicia Gibson, for alibi purposes. The state opposed the continuance, which the trial court denied, thus excluding Ms. Gibson's testimony. Mr. Cochran presently contends the trial court erred in not applying the test set forth by the Supreme Court of Ohio in Lakewood v.Papadelis (1987), 32 Ohio St.3d 1, 5. Therein, the court prescribed a series of factors which the trial courts should apply when considering witness preclusion as a sanction for discovery violations under Crim.R. 16.[2] The factors include: (1) surprise or prejudice to the state; (2) the impact of witness preclusion on the evidence to be presented and the outcome of the case; (3) the willfulness or bad faith of the discovery violation; and, (4) the effectiveness of less severe sanctions. Papadelis at 5. A trial court is required to impose the least severe sanction consistent with maintaining the rules of discovery. Id. Mr. Cochran believes a less severe sanction than exclusion of his mother's testimony was mandated.
 {¶ 19} We disagree. While not formally applying the Papadelis test, it is evident that the trial court did balance the state's interest against Mr. Cochran's Sixth Amendment right to present a defense, as the Supreme Court requires. Papadelis at 5. The trial court noted that the request to continue in order to obtain Ms. Gibson's testimony was made at the "eleventh hour;" it took into consideration the state's argument that seventeen witnesses had been subpoenaed, and were prepared to go forward. These issues go to the first Papadelis factor, surprise or prejudice to the state was great. Id. The trial court considered the fact that Mr. Cochran had another alibi witness, his grandmother. This goes to the second Papadelis factor, the preclusion of Ms. Gibson's testimony was less likely to affect the outcome of the trial, as Mr. Cochran had another alibi witness. Id. The trial court noted that the case against Mr. Cochran had been pending for six months prior to trial, and that it was somewhat incredible that his own mother had only recalled her testimony, and contacted his counsel, days prior to trial. This goes to the third Papadelis factor, the indicia of bad faith or willfulness regarding Ms. Gibson's late appearance on behalf of her son are great. Id.
 {¶ 20} In effect, the trial court considered the first threePapadelis factors, in arriving at the fourth, that only the denial of a continuance, and the exclusion of Ms. Gibson's testimony, were reasonable counters to the discovery violation. Under the circumstances of this case, no error pertains. "It is only when exclusion acts to completely deny defendant his or her constitutional right to present a defense that the sanction is impermissible." Papadelis at 5.
 {¶ 21} The second assignment of error lacks merit.
 {¶ 22} By his third assignment of error, Mr. Cochran attacks the trial court's partial denial of his motion in limine concerning evidence of other alleged criminal acts. The trial court held that evidence on this point could be introduced to show a plan between Mr. Cochran and his alleged accomplices, but that he was entitled to a limiting instruction regarding "bad character." Mr. Cochran maintains that the state's purpose in introducing "other acts" evidence was to show his bad character, and that this evidence was more prejudicial than probative.
 {¶ 23} We disagree. "Under Evid.R. 404(B), `evidence of other crimes, wrongs, or acts is not admissible to prove' a defendant's character as to criminal propensity. `It may, however, be admissible * * * [to show] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" State v. Noting, 98 Ohio St.3d 44,2002-Ohio-7044, at ¶ 44. In this case, the trial court allowed the testimony of Detective Hurd, and Mr. Cochran's alleged accomplices Mr. Laughery and Mr. Vecchio, regarding the various crimes perpetrated. As the trial court noted, each was a discreet act, but discreet acts may form a pattern. The "other acts" evidence to which Mr. Cochran objects establishes a pattern, and is fully admissible under Evid.R. 404(B).
 {¶ 24} The third assignment of error lacks merit.
 {¶ 25} By his fourth assignment of error, Mr. Cochran alleges the trial court failed to give an appropriate definition of the term "occupied structure" when instructing the jury on burglary. Mr. Cochran notes that the burglary statute, R.C. 2911.12, states the term "occupied structure" has the same meaning as that set forth in R.C. 2909.01. He postulates the trial court was required to give the full definition of "occupied structure" set forth in the latter statute, and that it's failure to do so means the jury was not instructed on every element of the offense of burglary. Failure to instruct on every element of an offense may be plain error or structural error, requiring reversal. Cf.State v. Wamsley, 7th Dist. No. 05 CO 11, 2006-Ohio-5303, at1J41-55.
 {¶ 26} Mr. Cochran is mistaken. The trial court's instruction regarding burglary contained a definition of the term "occupied structure." Thus, it cannot be said the trial court failed to instruct on an element of the offense. The only question is whether the trial court's definition of "occupied structure" was sufficient. It was. Further, as trial counsel failed to object to the instruction given, we may only review for prejudicial error. State v. Wojtkiewicz, 11th Dist. No. 2005-P-0098, 2006-Ohio-6094, at ¶ 28. Such error exists only if the outcome of the trial clearly would have been otherwise, absent the error. State v. Nichols, 11th Dist. No. 2005-L-017, 2006-Ohio-2934, at1J27.
 {¶ 27} Jury instructions should contain plain, unambiguous statements of the law applicable to the case. Nichols at ¶ 30. In this case, the trial court instructed the jury that to find Mr. Cochran guilty of burglary as specified, they would have to "* * * find beyond a reasonable doubt that the Defendant did, on the assigned dates of each of these counts * * * by force, stealth, or deception, trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with the purpose to commit in the habitation any criminal offense." This complies with the statutory language. The trial court further instructed the jury that: "[a]n occupied structure means any house, building, or other structure or shelter or any portion thereof."
 {¶ 28} Mr. Cochran's complaint that the definition of "occupied structure" set forth at R.C. 2909.01(C) was not used is premised on the fact that among the occupied structures allegedly looted were attached garages. He seems to feel that the definition of "occupied structure" in R.C. 2909.01(C) casts doubt on the notion that an attached garage is an occupied structure. This is erroneous. A garage attached to a house is obviously a "portion" of that house — and thus, of an "occupied structure." "* * * [T]erms of common usage need not be defined for the jury." Wamsley at ¶ 62.
 {¶ 29} The fourth assignment of error lacks merit.
 {¶ 30} By his fifth assignment of error, Mr. Cochran asserts that the trial court's instructions regarding theft were incomplete and confusing. He contends that the trial court erred by not instructing the jury that the offense includes not merely exerting control of another's property with the purpose to deprive the owner of the property, but that the control so exerted was without consent of the owner or his designee.
 {¶ 31} The error assigned seems to go to Mr. Cochran's conviction for petty theft, not his various theft convictions. The trial court instructed on petty theft first, theft thereafter. The petty theft instruction does not include the proviso that the control sought to be exerted over another's property was without that person's consent. The theft instruction does. While mindful that jury instructions must be construed as a whole, Wojtkiewicz at ¶ 28, the concepts of petty theft and theft as given by the trial court are sufficiently different that it may be said an essential element of the offense was omitted from the instruction on petty theft. Reversal seems in order. Cf.Wamsley, at ¶ 55.
 {¶ 32} Insofar as it relates to his convictions for petty theft, the fifth assignment of error has merit.
 {¶ 33} By his sixth assignment of error, Mr. Cochran asserts that the trial court was required to give a jury instruction on burglary of the third degree, R.C. 2911.12(A)(3), as a lesser included offense when instructing the jury on burglary of the second degree, R.C.2911.12(A)(2). The offenses differ in that third degree burglary does not require that a person (other than an accomplice) be present or likely be present at the time the offense is committed. Mr. Cochran relies on the testimony of his alleged accomplice, Mr. Laughery, that the cohorts usually tried to ascertain if anyone was present before entering premises to commit crime, to support his contention that an instruction on third degree burglary was required.
 {¶ 34} "The test to be applied when determining if a charge or instructions should be given on a lesser included offense is whether the jury could find against the state on an element of the crime charged, yet find for the state on the remaining elements which would be sufficient to sustain a conviction on a lesser included offense. If the jury can reasonably find that the state failed to prove one element of the charged offense beyond a reasonable doubt, thus sustaining a conviction on a lesser included offense, a charge on the lesser included offense is required. However, `if the jury could not reasonably find against the state on an element of the crime, then a charge on a lesser-included offense is not only not required but is also improper.' * * * `A criminal defendant is entitled to a lesser-included-offense instruction, however, only where the evidence warrants it.' * * *[.]"State v. Houseman (1990), 70 Ohio App.3d 499, 506. (Internal citations omitted.)
 {¶ 35} Second degree burglary does not require that a person (other than an accomplice), actually be present when the offense occurs — only a likelihood of their presence is required. State v. Cantin (1999),132 Ohio App.3d 808, 812. Mr. Cochran was charged with five counts of second degree burglary, four of the five homeowners burglarized testified that they were home during some portion of the day during which the crime occurred. This is sufficient to establish the requisite likeliness of their presence to support second degree burglary. Cf. State v.Kilby (1977), 50 Ohio St.2d 21, paragraph one of the syllabus. Regarding these four counts of second degree burglary, there was no reasonable possibility that the jury could find against the state on any element of second degree burglary. Cf. Houseman at 506-507. Thus, an instruction on third degree burglary would have been improper. Id. at 507.
 {¶ 36} However, the only testimony regarding the whereabouts of Laura Dietrich on the day her home was burglarized was provided by Mr. Cohran's alleged accomplice, Mr. Laughery. He testified they inquired of Ms. Dietrich whether they could bring children to fish in a pond on her property; and, that she told him she would be gone the following day. The burglary took place then. There is no evidence in the record there was any likelihood, from Ms. Dietrich's known schedule or intentions, that anyone would be present when the burglary occurred. Thus, regarding the Dietrich burglary, a jury could have reasonably found against the state on one element of second degree burglary, and still have found against Mr. Cochran for third degree burglary. See, e.g.,Cantin at 812-814.
 {¶ 37} The sixth assignment of error has merit regarding Mr. Cochran's conviction for the Dietrich burglary, and fails regarding each other count of burglary for which he was convicted.
 {¶ 38} By his seventh assignment of error, Mr. Cochran asserts that the trial court was required to instruct the jury that his alleged accomplices' guilty pleas could not be considered evidence of his guilt. The state counters that no objection to the trial court's instructions regarding accomplices, and the quality of their evidence, was made at trial, waiving all but plain error in the instructions given. It notes the trial court advised the jury to view the testimony of Mr. Laughery and Mr. Vecchio cautiously, and with suspicion. It notes that Mr. Cochran, himself, introduced the plea agreements into evidence, and asserts that any error by the trial court was invited, and thus not appealable.
 {¶ 39} The state's arguments are persuasive. In particular, the trial court admonished the jury on three separate occasions that it must view the testimony of Mr. Cochran's alleged accomplices with great caution and suspicion. Viewing the jury charge as a whole, we find this was all that was required.
 {¶ 40} The seventh assignment of error lacks merit.
 {¶ 41} By his eighth assignment of error, Mr. Cochran seems to attack the sufficiency of the evidence underlying his convictions for second degree burglary. Once again, he relies on the testimony of his alleged accomplice, Mr. Laughery, that the burglaries were planned for when the homeowners were out, to show the state could not prove that element of the offense requiring the likely presence of a non-accomplice in the burglarized structure.
 {¶ 42} "A sufficiency of the evidence argument challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of the evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to the prosecution, any rational trier of fact could find all elements of the charged offense proven beyond reasonable doubt."State v. Barno 11th Dist. No. 2000-P-0100, (Sept. 21, 2001), 2001 Ohio App. LEXIS 4280, at 16. Whether sufficient evidence has been presented to allow the case to go to the jury is a question of law: consequently, an appellate court is not permitted to weigh this evidence when making the inquiry. State v. Schlee (Dec. 23, 1994), 11th Dist No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13. A reviewing court will not reverse a jury verdict "'where there is substantial evidence upon which the jury could reasonably conclude that all of elements of an offense have been proven beyond a reasonable doubt.'" Id. at 14. An appellate court examines the evidence and determines whether that evidence, "if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt." State v. Norwood, 11th Dist. No. 2005-L-047,2006-Ohio-3415, at ¶ 15.
 {¶ 43} Applying these standards to the record, it is clear the state carried its burden on four of the five burglary counts. Regarding second degree burglary, R.C. 2911.12 provides:
 {¶ 44} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 45} "* * *
 {¶ 46} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense * * *[.]"
 {¶ 47} The testimony of Mr. Cochran's alleged accomplices, with that of the homeowners who testified, and the recovered items from their homes, clearly established that in four of the cases, the cohorts entered homes, or their appurtenant garages or sheds, without permission, and stole items, when the homeowners were likely to be present. This is second degree burglary.
 {¶ 48} However, for the same reasons as set forth under the sixth assignment of error, the second degree burglary count relating to Laura Dietrich's home cannot stand. The state failed to provide sufficient evidence that she was likely to be present at the time of the offense.
 {¶ 49} Solely as it relates to Mr. Cochran's conviction for second degree burglary of Ms. Dietrich's home, the eighth assignment of error has merit.
 {¶ 50} By his ninth assignment of error, Mr. Cochran asserts the trial court erred in giving him the maximum sentence for second degree burglary — eight years. First, he argues the trial court misapplied R.C.2929.12(C), which requires a sentencing court to consider whether an "offender's conduct is less serious than conduct normally constituting the offense * * *[.]" He maintains, once again, that there was no evidence that he committed second degree burglary, as there was no likelihood that any of the homeowners were present at the time of the burglaries. Consequently, he maintains his conduct was less serious than the worst form of second degree burglary.
 {¶ 51} This argument fails. Mr. Cochran received eight year (concurrent) sentences on three of the burglaries, including that of Ms. Dietrich's home. As noted previously, the state met its burden of proof on every element of second degree burglary on each of the burglary counts for which Mr. Cochran was convicted, except the Dietrich burglary. The evidence simply does not support Mr. Cochran's contention that his conduct was less serious, because it constituted a lesser degree of the offense charged.
 {¶ 52} Under his ninth assignment of error, Mr. Cochran also alleges violation of his Sixth Amendment rights under State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. He alleges the trial court applied R.C.2929.14(C) in imposing a maximum term of imprisonment — eight years — for three of the five second degree felonies for which he was convicted. In Foster, the Ohio Supreme Court found R.C. 2929.14(C) unconstitutional, as it required a sentencing judge to make certain factual findings before imposing a maximum sentence, those findings not having been made by a jury or admitting by the defendant.Foster at paragraph one of the syllabus.
 {¶ 53} This argument fails. Mr. Cochran's sentencing hearing occurred March 1, 2006; the judgment entry of conviction was filed March 9, 2006. This is after the ruling in Foster was announced. Thus, this case does not require automatic vacation of the sentences, and remand, as the matter was not on direct review at the time. Cf. Id. at ¶ 103-104. There is nothing in the judgment entry of conviction indicating the trial court applied R.C. 2929.14(C) in imposing maximum sentences on Mr. Cochran — that statute is not mentioned. The trial court certainly gave reasons at the sentencing hearing why it believed maximum sentences were appropriate for three of the five second degree felonies for which Mr. Cochran was convicted — but as sentencing within the statutory range is now wholly within the discretion of the trial courts, this can hardly be deemed reversible error. Cf. Foster at paragraph seven of the syllabus.
 {¶ 54} The ninth assignment of error lacks merit.
 {¶ 55} For the reasons stated in this opinion, Mr. Cochran's conviction and sentence on the Dietrich burglary, specifically count ten, is reversed, as are his two convictions for petty theft, count two and amended count four. Otherwise, the judgment of the Geauga County Court of Common Pleas is affirmed. The judgment of the trial court is affirmed in part and reversed in part.
CYNTHIA WESTCOTT RICE, J., concurs,
WILLIAM M. O'NEILL, J., dissents with Dissenting Opinion.
[1] The declarant who did not testify was one of the victimized homeowners, Ms. Laura Dietrich. However, Mr. Laughery, Mr. Cochran's alleged accomplice, did testify about robbing her property.
[2] As the state notes, pursuant to Crim.R. 16, Mr. Cochran was required to supply it with a list of his witnesses and their addresses; further, he was required to file a notice of alibi at least seven days prior to trial pursuant to Crim.R. 12.1.