{¶ 112} I dissent as to the majority's conclusions pertaining to subpart (A) of appellant's first assignment of error. Subpart (A) assigns error to the following jury instruction relating to a portion of the court's statement of law regarding the mens rea element of "knowingly." The court's statement reads: "In analyzing knowledge as a mental state, culpability is inferred from the voluntary performance of the act itself, where the risk of a resulting harm is present."
 {¶ 113} The majority takes issue with two aspects of this instruction. First, the majority contends the instruction required the jury to accept an improper mandatory presumption regarding the manner in which it considered the evidence relating to the knowingly element of felonious assault. It maintains the instruction effectively *Page 24 
commanded the jury to find appellant acted knowingly if it determined he acted voluntarily. I shall address this conclusion first.
 {¶ 114} In order to properly frame this discussion, it is necessary to point out that a reviewing court evaluating jury instructions may not consider statements in a vacuum or in a fragmentary fashion. Rather, an instruction must always be considered in the context of the entire charge. State v. Wojtkiewicz, 11th Dist. No. 2005-P-0098,2006-Ohio-6094, at ¶ 28. Moreover, a conviction will not be reversed based upon jury instructions unless the erroneous instructions amount to prejudicial error. State v. Dehass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 115} Here, the majority insists that the court's statement that "culpability is inferred from the voluntary performance of the act itself" is an unconstitutional mandatory presumption. As discussed by the majority, a mandatory presumption is generally a function of "commanding" language, which forecloses the factfinder from rejecting a factual inference. Such language "violates a criminal defendant's right to due process because it always requires the jury to infer the existence of a fact whenever the state has proven certain underlying facts." State v. Jenkins (Apr. 23, 1999), 11th Dist. No. 97-L-303, 1999 Ohio App. LEXIS 1863, *13. I do not believe the instruction at issue includes such language.
 {¶ 116} Prior to pronouncing the purportedly problematic instruction, the court set forth the definitions of the terms "inference" and "knowingly." With respect to the former, the court stated:
 {¶ 117} "To infer, or to make an inference, is to reach a reasonable conclusion of fact which you may, but are not required to, make from other facts which you find have *Page 25 
been established by direct evidence. Whether an inference is made rests entirely with you."
 {¶ 118} In defining "knowingly," the court stated:
 {¶ 119} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result. A person has knowledge of circumstances when he is aware that such circumstances probably exist. * * * Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from the facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that his conduct would cause serious physical harm to [the victim.]"
 {¶ 120} After setting forth these definitions, the court gave the purportedly problematic definition, to wit, "culpability isinferred from the voluntary performance of the act itself * * *." (Emphasis added.) Considering the instructions as a whole, the foregoing statement implies that culpability vis-à-vis the mental state "knowingly" is a conclusion of fact which the jury could, but was not required to, make from appellant's voluntary performance of the striking or repeatedly striking the victim. As a result, I would hold the jury was not foreclosed from rejecting a factual inference. Rather, the instruction indicates the jury was permitted, but was not required, to conclude appellant acted "knowingly" based upon the voluntariness of his actions. The instruction did not command the jury to conclude appellant acted knowingly from evidence of the voluntariness of his acts; to the contrary, given the definitions of "inference" and "knowingly," the jury was free to draw a reasonable conclusion about appellant's mental state from evidence of his voluntary actions, one fact or circumstance that could lead to *Page 26 
a reasonable conclusion on the matter, or base its conclusion upon other relevant evidence. Given the entire charge, I see no prejudicial error.
 {¶ 121} Next, the majority takes issue with the portion of the instruction which reads "where the risk of resulting harm is present." The majority believes this is a misleading statement of law which impermissibly diluted the state's burden. To wit, the majority observes: "Had the instruction been given as `where the risk of serious physical harm is present,' it would have been a more accurate statement of the law. As given, the instruction permitted the jury to find Jeffers guilty if there was only the risk of `a harm,' while the felonious assault statute requires Jeffers to be aware that his conduct will probably result in `serious physical harm.'" Again, I disagree.
 {¶ 122} Prior to providing this instruction, the court set forth the statutory definition of felonious assault, viz., that, on or about February 8, 2006, appellant knowingly caused serious physical harm to the victim. The "resulting harm," in this case, was the serious physical harm to the victim. The jury was aware that the type of harm discussed in the instruction as "the resulting harm" related back to that set forth in the predicate charge, i.e., "serious physical harm." Furthermore, the statement at issue was part of the instruction that related to the "knowingly" element. Later, the court delimited the nature of "serious physical harm," stating:
 {¶ 123} "Serious physical harm to persons means any of the following. One, any physical harm that carries a substantial risk of death. Two, any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity. Three, any physical harm that involves some permanent disfigurement. Or four, any physical harm that involves acute pain of such *Page 27 
duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 124} The court instructed the jury that the state was required to prove appellant knowingly caused serious physical harm before delivering the instruction with which the majority takes issue and provided specific guidance on the nature of serious physical harm after delivering the statement. When viewed in the totality, I do not think the instruction reduced the state's burden of proof. Again, I would hold, in the context of the instructions as a whole, there was no prejudicial error.
 {¶ 125} With this in mind, however, I agree with the majority's view that trial courts should minimize the use of jury instructions constructed from language found in appellate court opinions which were not intended to be used as jury instructions. Selecting vivisected portions of language from past cases which have, for one reason or another, sustained appellate scrutiny may prove dangerous to the charge as a whole.
 {¶ 126} Finally, the majority holds that, upon retrial, if the trial court provides an instruction on misdemeanor assault, it should also instruct the jury on non-deadly force self-defense as well. In the abstract, I agree with the majority's logic. However, pursuant to the above reasoning, I would affirm appellant's convictions. Consequently, the jury's determination that appellant was guilty of felonious assault, i.e., that he knowingly caused serious physical harm to the victim, would obviate such an instruction for purposes of my analysis.
 {¶ 127} A reviewing court is obligated to observe the entirety of a charge to determine whether prejudicial error issued from a potentially misleading or erroneous charge. Here, I believe the instructions, read in their totality, are sufficient to withstand appellate review. This does not mean the challenged instructions should be construed *Page 28 
as generally sufficient for all cases of felonious assault. Inserted in a different format, they could be inappropriate and possibly prejudicial.
 {¶ 128} I accordingly dissent. *Page 1