[Cite as *State v. Sharma*, 2016-Ohio-7744.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | CASE NO. 2015-L-083 |
| - vs - | : | |
| INDER JEET SHARMA, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 14 CR 000447.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, *Karen A. Sheppert* and *Jenny B. Azouri,* Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Russell S. Bensing,* 600 IMG Building, 1360 East Ninth Street, Cleveland, OH 44114 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} After trial by jury, appellant, Inder Jeet Sharma, was convicted by the Lake County Court of Common Pleas on one count of gross sexual imposition and one count of importuning, each a felony of the third degree. He now appeals from the judgment of conviction. We affirm.

{¶2} Appellant was a 62-year-old clinical nurse specialist who worked with patients suffering from workers' compensation-related injuries. David Salyers suffered a

severe back injury while working construction and began seeing appellant in 2012 for sleep-related problems. Mr. Salyers' daughter, the victim, had occasion to accompany her father to his appointments with appellant. At the time of the incident, the victim was 12 years old.

{¶3} On May 3, 2014, during one of Mr. Salyers' appointments, appellant spoke with the victim and gave her his cell phone number. He asked her to text him regarding her father's condition. He further gave the girl $20 so she and Mr. Salyers could go out together after the appointment. They went to Starbucks and, when she returned home, she texted appellant: "Hey its [M.S.]" Appellant responded "How u doing. Keep secret." Appellant also asked her if she needed more money; the victim declined. Appellant next asked the victim "U like me?" The victim stated "Yes," and appellant advised her to "Keep deleting ur messages." Appellant asked how Mr. Salyers was doing and the victim responded, "good."

{¶4} On May 4, 2014, appellant texted the victim, asking her what she likes to do and if he could buy her anything for her upcoming birthday. The victim responded she would like an iPod. Appellant told her he would be happy to make this purchase, but advised her to keep their conversations secret and continue deleting the messages.

{¶5} On May 24, 2014, appellant texted the victim asking her how much she liked him. She responded, "[a]s a friend." He proceeded to ask the victim about her "fantasy" to which the victim stated, "One Direction tickets." Apparently unsatisfied with the victim's response, on May 25, 2014, appellant queried, "What's ur sweet wish[?]" The victim did not respond.

{¶6} On June 7, 2014, Mr. Salyers and the victim arrived at appellant's office for his next appointment. Appellant met them in the waiting area and escorted them to

2

his office; as they proceeded, appellant placed his arm around the victim's waist. After they entered appellant's office, he offered Mr. Salyers coffee; Mr. Salyers accepted and left the office. Appellant subsequently asked the victim if she "did sex" and if he could "touch" her. The victim responded in the negative after which Mr. Salyers returned to the office.

{¶7} According to the victim, appellant told Mr. Salyers he wished to speak with the victim privately to talk about her mother. Mr. Salyers obliged and, after he exited, appellant closed the door. Appellant proceeded to touch the victim's chest; he also attempted to kiss her and put his hand under her shirt. The victim testified she exited the office, found her father, and advised him she wanted to leave. Mr. Salyers stated the victim looked shocked, and he thought he observed tears; before leaving, however, they returned to appellant's office and he provided Mr. Salyers with a prescription and gave the victim another $20.

{¶8} After exiting the office, the victim told Mr. Salyers appellant rubbed her breasts, tried to touch her privates, and asked if she "did sex." Mr. Salyers then traveled to the Mentor Police Department where both he and the victim gave statements and surrendered the $20. Officers subsequently assisted the victim in making a controlled call to appellant; the calls were made with a police-department-issued cell phone. The calls went directly to voice mail. The victim left messages letting appellant know she was using a friend's phone and that he could call her back on that number. Unable to reach appellant, Mr. Salyers and the victim returned home.

{¶9} The departmental phone was kept in the custody of Detective Dennis Collins of the Mentor Police Department. For the next two days, using the information provided by the victim and Mr. Salyers, Detective Collins commenced communicating

3

with appellant, via texts, posing as the victim. During the course of the messaging, Detective Collins exchanged multiple messages with appellant's phone. To establish contact, he identified himself as the victim and encouraged the individual possessing the phone to text.

{¶10} In early messages, the sender asked the victim if she needed more money; whether she still liked the sender; and made regular requests for the victim to call. As the conversations continued, the content of the messages became progressively more salacious. The sender asked, inter alia, whether the victim enjoyed the "touching" that occurred at the office; whether she would allow additional "touching;" and whether the sender could "suck it." The sender further asked whether the victim would allow touching "down there." The sender eventually clarified he was interested in engaging in digital and oral sex with the victim. And other texts asked the victim if she would "touch" the sender as well as provide oral sex.

{¶11} After engaging in the foregoing conversations, Detective Collins attempted to arrange a meeting with the sender at a local mall; the sender appeared very interested at first, conveying his desire to engage in oral sex with the victim in the parking lot. The sender, however, eventually expressed concern that the meeting could be a trap and did not accept the invitation.

{¶12} The following day, the sender texted the police-issued cell phone. The sender indicated he stopped texting the previous night because "my phone got dead." The sender apologized and stated, "I thought somebody else is using ur phone. I think more of ur safety. Ur my sweet baby. I really love u." The sender's prurient overtures also persisted, albeit to a lesser degree.

4

{¶13} By this time, police were aware of appellant's address and had sent several officers, including Detective Collins, in unmarked vehicles to the location. The officers ultimately observed a Honda Pilot, the vehicle appellant was known to drive, pull into the residence. When officers observed appellant exit the vehicle, they immediately arrested him. In the course of the arrest, Detective Collins called the number he had been texting and the phone in appellant's pocket vibrated. He advised the detective "[y]ou can't search that phone." In the phone's contact list, the number of the departmental phone used by Detective Collins was labeled with the victim's name. All text messages relevant to the investigation sent to and received by appellant were ultimately retrieved by police.

{¶14} On September 22, 2014, the Lake County Grand Jury returned an indictment charging appellant with one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a felony of the third degree; and two counts of importuning, in violation of R.C. 2907.07(C)(2), both felonies of the third degree. Appellant pleaded not guilty to the charges.

{¶15} The state filed a motion in limine, seeking to bar the defense from cross-examining the victim regarding a previous juvenile adjudication relating to domestic violence. The basis for the motion was that juvenile adjudications are not admissible for impeachment purposes under R.C. Evid.R. 609(D). The trial court granted the motion.

{¶16} The matter proceeded to a jury trial. At trial, the state presented testimony from, inter alia, Mr. Salyers, the victim, and Detective Collins. Appellant's phone and photos of his text-message exchanges with the victim as well as those between appellant and Detective Collins (posing as the victim) were introduced as exhibits.

5

{¶17} Appellant testified on his own behalf. He acknowledged he exchanged phone numbers with the victim and had given her and Mr. Salyers $40. He confirmed he saw Mr. Salyers and the victim at his office on June 7, 2014; he denied speaking with the victim on that date and testified he only patted the victim on the back as she and Mr. Salyers left the office. Appellant denied texting or receiving texts from the victim in the days following the June 7 appointment; he acknowledged, however, he received two voice mails from the victim which he could not understand.

{¶18} Appellant additionally explained he began receiving text messages from a number he did not recognize; he acknowledged he carried on a continuing dialogue with the number that involved "pretty racy messages." And, appellant testified, while he did enter the victim's name on the number in the contact list, he only did so to authenticate, from his point-of-view, that the messages were sent from someone posing as the victim.

{¶19} On cross examination, appellant admitted he sent each text to the victim on her original phone; as such, he conceded he invited her to call him if no one was around; he asked if she liked him; he told her he wanted to buy her a birthday gift; he queried about her fantasy or "sweet wish;" he asked if she needed more money; and he directed her to delete these messages. When asked about the sexually explicit messages sent from his phone to the departmental phone, he testified he did send them, but "knew" the messages were sent to someone other than the 12-year-old victim. Appellant could not explain why he carried on the lascivious exchanges with the purportedly unknown individual; he simply testified he did so out of "stupidity."

{¶20} After deliberating on the evidence, the jury returned a verdict of guilty on each of the three counts. After a sentencing hearing, the trial court merged the two counts of importuning and imposed a sentence of three-years imprisonment for each of

6

the remaining two counts; the court ordered the sentences to be served concurrently. The court further notified appellant that, by virtue of the convictions, he was classified as a Tier II Sex Offender. Appellant now appeals and assigns two errors; his first assigned error states:

{¶21} "The trial court erred in refusing to permit Defendant to cross-examine the alleged victim regarding a juvenile domestic violence adjudication."

{¶22} Under this assignment of error, appellant agrees that the trial court properly granted the state's motion in limine relating to the victim's juvenile adjudication pursuant to Evid.R. 609(D). He argues, however, the trial court erred in failing to permit defense counsel to cross examine the victim on the adjudication to show bias or interest. Pursuant to *Davis v. Alaska*, 415 U.S. 308 (1974), appellant asserts a juvenile adjudication is admissible under such circumstances to protect a defendant's right to confrontation. We do not agree with appellant's argument.

{¶23} Preliminarily, although defense counsel asserted, at the hearing on the motion in limine, that the underlying domestic violence adjudication would be germane to her veracity, counsel did not attempt to use this argument as a justification for cross-examination at trial. A ruling on a motion in limine is an interlocutory order that is a threshold ruling. *See e.g. State v. Grubb*, 28 Ohio St.3d 199, 201 (1986). When a motion in limine is granted, finality does not attach and the trial court has the liberty to reconsider the admissibility of the evidence, in its full context, if such circumstances develop during trial. *Id.* Accordingly, a ruling granting a motion in limine neither, per se, preserves the record for opposing counsel nor relieves counsel of the obligation of making a proffer of the evidence when the issue of admissibility is ripe for consideration. *Id.* at 202. Counsel did not seek to cross-examine the victim on the juvenile

7

adjudication nor make a proffer when the issue became ripe. In this respect, appellant has waived all but plain error on this issue. *See* Crim.R. 52(B); *See also State v. Wojtkiewicz*, 11th Dist. Portage No. 2005-P-0098, 2006-Ohio-6094, ¶19. Plain error does not exist unless, but for the error, the outcome at trial would have been different. *State v. Jenks*, 61 Ohio St.3d 259, 282 (1991). We discern no plain error.

{¶24} It is unclear how the victim's adjudication for juvenile domestic violence would be at all relevant to establishing the victim's bias or questioning her veracity. Counsel made no proffer at trial, attempting to connect how the adjudication might show bias or affect the victim's veracity; and appellant fails to draw the connection in his brief. We consequently fail to see how this issue rises to a violation of appellant's right to confrontation. *Davis*, upon which appellant relies under this assignment of error, is accordingly inapplicable. For these reasons, we conclude the trial court did not err in failing to take notice of and consider the implications of *Davis* in this case.

{¶25} Appellant's first assignment of error is without merit.

{¶26} Appellant's second assignment of error provides:

{¶27} "The trial court erred in entering convictions against Defendant [on] gross sexual imposition and importuning that were against the manifest weight of the evidence, in derogation of Defendant's right to due process of law, as protect[ed] by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

{¶28} A manifest weight challenge requires an appellate court to consider the entire record, including the credibility of witnesses and potential conflicts in the evidence, and determine whether the jury clearly lost its way such that the verdict of guilty resulted in a manifest miscarriage of justice requiring a new trial. *See e.g. State v.*

8

*Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15 (Dec. 23, 1994). A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case where the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶29} Under this assignment of error, appellant argues the evidence allegedly supporting his convictions for gross sexual imposition and importuning is contradictory and lacks credibility. Hence, he maintains, the jury's verdict is against the weight of the evidence. We do not agree.

{¶30} Appellant first asserts Mr. Salyers gave inconsistent testimony regarding whether the victim's cell phone was registered in his name and whether he confronted appellant about texting the victim. Appellant further notes Mr. Salyers' lack of clarity on how often he left appellant's office on the day appellant touched the victim and whether the door was open or closed when he left the office. Even assuming, arguendo, these points might somehow affect Mr. Salyers' credibility, none of them undermines the remaining *significant* evidence that appellant committed gross sexual imposition.

{¶31} To convict appellant of gross sexual imposition, in violation of R.C. 2907.05(A)(4), the state was required to prove that appellant had sexual contact with the victim, who was less than 13 years old, regardless of whether appellant knew her age. Sexual contact includes "any touching of an erogenous zone of another, including without limitation * * * if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶32} Irrespective of any potential inconsistencies or idiosyncrasies in Mr. Salyers' testimony, it is undisputed the incident occurred when the victim was 12 years old. Moreover, the victim testified appellant touched her breast in his office. And later

9

text messages sent by appellant to the departmental phone operated by Detective Collins confirmed that appellant touched the victim's breasts. Moreover, the context and tone of appellant's continued sexually-oriented messages permit the reasonable inference that appellant touched the victim for the purpose of sexual arousal and gratification.

{¶33} We acknowledge that appellant testified he did not think he was sending the sexually explicit messages to the victim; still, the evidence demonstrated the victim's contact information in appellant's phone matched the number of the departmental phone. And, appellant's text messages served to independently corroborate the victim's general account that appellant did, in fact, touch her inappropriately on her breast. The conviction for gross sexual imposition is supported by sufficient and ample credible evidence.

{¶34} Appellant next challenges the importuning conviction, pursuant to R.C. 2907.07(C)(2). To obtain a conviction under this subsection, the state had to prove appellant solicited another, by means of a cellular phone in this case, to engage in sexual activity with him, where appellant was over 18 years of age and the other individual was a law enforcement officer posing as a person under 13 years of age, and appellant believed the person is less than 13 years of age or was reckless in that regard.

{¶35} The evidence demonstrated that appellant, on at least one occasion, referred to the victim by her first name while exchanging texts with Detective Collins. Moreover, the victim's name was designated as the contact for the phone number used by Detective Collins. Accordingly, despite appellant's testimony that he did not think he was texting with the victim, the reasonable inference can be drawn that appellant, at the

10

time he was soliciting as well as offering sexual favors by means of text messages, believed he was texting the victim, a 12-year-old girl.

{¶36} Appellant argues that because he expressed concerns that the individual he was texting might not be the victim, the evidence militates against the inference that he believed he was texting her. Even if he had reservations about the identity of the individual he was texting, he nevertheless continued to communicate via text making graphic sexual requests. Appellant's persistence supports the reasonable conclusion that, even if he had concerns about the individual's identity, he acted recklessly, i.e., with heedless indifference to the consequences, with respect to this issue. *See* R.C. 2901.22(C) (statutory subsection defining the mental state of "reckless.")

{¶37} Appellant's second assignment of error lacks merit.

{¶38} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

11